STATE of Wisconsin, Plaintiff-Appellant,

v.

CHRYSLER OUTBOARD CORPORATION, a/k/a Beaver Dam Products Corporation, a/k/a Chrysler Marine Corporation, a foreign corporation, Defendant-Respondent.

Supreme Court

*No. 96–1158. Oral argument December 3, 1997.—Decided June 19, 1998.*

(On certification from the court of appeals.)

(Also reported in 580 N.W.2d 203.)

132

For the plaintiff-appellant the cause was argued by *Shari Eggleson* and *Cynthia R. Hirsch*, assistant attorney generals, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent there was a brief by *Steven C. Kohl* and *Howard & Howard Attorneys, P.C.*, Bloomfield Hills, MI and *William F. Reilly* and *Hippenmeyer, Reilly & Moodie, S.C.*, Waukesha and oral argument by *Steven C. Kohl*.

¶ 1. JON P. WILCOX, J. This case is before the court on certification from the court of appeals following an order of the Circuit Court for Waukesha County, Patrick L. Snyder, Judge, which dismissed the appellant State of Wisconsin's (State) environmental enforcement action pursuant to Wis. Admin. Code §§ RD 51.05–.06 (1969) (Solid Waste Law) for failure to commence the action within the applicable statute of limitations. The circuit court also held that the State could not impose liability upon the respondent Chrysler Outboard Corporation (Chrysler)[1] pursuant

---

[1] In their briefs to this court, the State refers to the respondent as "Chrysler Outboard Corporation," while the respondent uses its current corporate title, "Beaver Dam Products Corporation." For purposes of simplicity, we use the former title throughout this opinion.

136

to Wis. Stat. § 144.76(3) (1977) (Spills Law) because Chrysler caused the hazardous substance spill at issue prior to the effective date of the Spills Law. The State appealed.

¶ 2. On certification, we consider two issues: (1) whether the State's Solid Waste Law violation enforcement action is subject to a statute of limitations bar or to the application of the "discovery rule"; and (2) whether Wis. Stat. § 144.76(3) (1977) is applicable to post–1978 discharges resulting in part from pre–1978 acts when the implicated party does not own or possess the affected property but generated the wastes and failed to remediate their subsequent spillage. We hold that the discovery rule is not applicable to the State's environmental enforcement action under the Solid Waste Law,[2] and that the Spills Law is applicable in actions by the State to compel remediation of, and to impose penalties for, hazardous substance spills which, although initially caused in part by actions preceding the statute's May 21, 1978, effective date, continue to discharge after that date. Therefore, we affirm the order of the circuit court dismissing the State's action pursuant to the Solid Waste Law as time-barred, and reverse the circuit court's order which dismissed the State's action under the Spills Law.

¶ 3. The facts relevant to our decision are not in dispute. Chrysler, a foreign corporation registered to do business in the state of Wisconsin, owned and operated a plant in Hartford, Wisconsin, from 1965 to 1984

---

[2] At oral argument in this case, the State clarified that it seeks "to apply the discovery rule to violations of environmental law, particularly this environmental law in this case." We express no opinion on the application of the discovery rule to violations of environmental law that are not present in this case.

where it manufactured outboard marine engines. The manufacturing process generated waste paints, oils, and solvents, some of which contained hazardous substances as defined by Wis. Stat. § 144.30(10) (1977).

¶ 4. For approximately the first six months of 1970, Chrysler contracted with a construction and demolition business known as Keller Transit to remove the waste, contained in 55-gallon drums, from the Hartford plant for disposal. Keller Transit hauled the waste to a site located in the Village of Hartland, then owned by Mr. Lee Hasslinger, president of Keller Transit, and now owned by a real estate partnership named Bark River Properties (Bark River site). Keller Transit dumped the drums together with other rubbish in a low spot at the Bark River site, and covered the area with fill. The drums remained buried there until they were discovered in late 1992.

¶ 5. On August 25, 1992, the State became aware of the drums for the first time. In the ensuing investigation, the State determined that at least some of the drums originated at Chrysler's Hartford plant. Testing at the Bark River site has shown that the hazardous wastes have discharged into the ground, producing a plume of groundwater contamination at least one-half mile long. The plume contains levels of chlorinated solvents as much as ten times the safe drinking water standard.

¶ 6. The subsequent litigation between the State and Chrysler produced a settlement, by which Chrysler agreed to excavate and properly dispose of the drums and to remediate the environmental damage caused by the discharge of the hazardous waste. In August 1993, in consultation with the Department of Natural Resources (DNR), Chrysler submitted a work plan for investigation and interim response activities. Excava-

tion of the site commenced in December 1993, and the DNR has subsequently issued a closure letter to Chrysler which indicates that the site has been satisfactorily remediated with respect to the removal of the buried drums and remediation of the contaminated soil, but not with respect to the groundwater contamination at the site.[3] Of the 401 drums eventually excavated from the Bark River site, 240 contained hazardous wastes.

¶ 7. In 1995, the State commenced this action seeking both injunctive relief and civil penalties under both the Solid Waste Law and the Spills Law.[4] The Solid Waste Law was promulgated pursuant to Wis. Stat. § 144.43 (1967), which provided in pertinent part:

> **144.43 Solid Waste Disposal Standards.** The department shall, no later than January 1, 1969, prepare and adopt minimum standards for the location, design, construction, sanitation, operation and maintenance of solid waste disposal sites and facilities. . . .[5]

The standards developed by the DNR are set forth in the Administrative Code, Wis. Admin. Code §§ RD 51.05–.06 (1969), and provide in relevant part:

---

[3] Specifically, the April 3, 1997, closure letter from the DNR to Chrysler indicates: "This closure determination does not include groundwater contamination found on the property nor the groundwater contamination migrating off the property." Record on Appeal 26:1.

[4] The State voluntarily dismissed, with prejudice, a third claim against Chrysler which alleged that Chrysler had illegally operated a hazardous waste facility without a license from the DNR.

[5] The enabling statute is currently codified at Wis. Stat. § 289.05 (1995–96).

**RD 51.05 Collection and transportation of solid waste.**

(1) The owner and occupant of any premises, business establishment or industry shall be responsible for the satisfactory collection and transportation of all solid waste accumulated at that premises, business establishment or industry to a solid waste disposal site or facility unless arrangements for such purpose have been made with a collecting and transporting service holding a permit from the department.

(2) All persons engaged in the business of collecting and transporting services. . .shall obtain an annual permit from the department as indicated in this chapter.

**RD 51.06 Disposal of solid waste.** No person shall dispose of any solid waste, including salvageable material, at any site or facility not licensed by the department. . . .[6]

¶ 8. The Spills Law, Wis. Stat. § 144.76 (1977), provides in part:

**144.76 Hazardous substance spills. (1)** DEFINITIONS. As used in this section:
 (a) "Discharge" means, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying or dumping.
 (b) "Hazardous substance" has the meaning given under s. 144.30(10).

. . .

**(3)** RESPONSIBILITY. Persons having possession of or control over a hazardous substance being dis-

---

[6] The DNR regulations are currently set forth in the NR500 series of the Wisconsin Administrative Code.

charged, or who cause a hazardous discharge, shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from any discharge to the air, lands or waters of this state.[7]

¶ 9. Violations of both the Solid Waste Law, effective May 1, 1969, and the Spills Law, effective May 21, 1978, were subject to penalties as provided by Wis. Stat. § 144.57 (1969) or a subsequent version of the same statute. The penalties provision states:

**144.57 Penalties.** Any person who violates this chapter, or who fails, neglects or refuses to obey any general or special order of the department, shall forfeit not less than $10 nor more than $5,000, for each violation, failure or refusal. Each day of continued violation is a separate offense. . . .[8]

¶ 10. The State seeks penalties for every day of violation of the Solid Waste Law in 1970, and every day of violation of the Spills Law since May 21, 1978. More specifically, the State seeks to impose penalties under the Solid Waste Law for Chrysler's failure to use licensed haulers to remove its solid waste, and for failure to deposit that waste at a licensed facility. The penalties sought for violations of the Spills Law relate to Chrysler's post–1978 failure to remediate the Bark River site. The injunctive relief sought by the State includes both an order requiring that Chrysler continue and complete remediation of the contamination at the Bark River site, and an order requiring Chrysler

---

[7] Wisconsin Stat. § 144.76(3) (1977) is currently codified at § 292.11(3) (1995–96).

[8] In 1979, Wis. Stat. § 144.57 was renumbered to Wis. Stat. § 144.99. It is currently codified at § 299.97 (1995–96) and reads substantially the same as it did in 1969.

to determine where the rest of the hazardous wastes it generated prior to 1976 at its Hartford plant were disposed.

¶ 11.　Both parties moved for summary judgment. The State asserted: (1) that the discovery rule should apply to its Solid Waste Law claim so as to eliminate any statute of limitations concern; and (2) that its attempt to impose liability under the Spills Law was not a retroactive, ex post facto application of the law since it sought to address only Chrysler's post–1978 failure to remediate the Bark River site—not its pre–1978 dumping activities. Chrysler responded and argued in its own motion for summary judgment that the discovery rule, previously employed in tort actions alone, should not be extended to environmental enforcement actions brought by the State years after the environmental violations occurred. In addition, Chrysler argued that any attempt to impose penalties and forfeitures under the Spills Law, which became effective in 1978, violates the ex post facto provisions of the state and federal constitutions since they would be predicated upon Chrysler's actions in 1970.

¶ 12.　Citing the fact that neither the legislature nor this court has extended the discovery rule to an environmental enforcement action of this sort, the circuit court denied the State's motion for summary judgment and granted summary judgment for Chrysler on the Solid Waste Law claim. Later, the circuit court denied the State's motion for summary judgment, and granted summary judgment in favor of Chrysler on the Spills Law claim. The circuit court concluded that the Spills Law does not allow the State to seek remediation from Chrysler because the hazardous substance spill was caused prior to the effective date of the Spills Law. Any penalties or forfeitures imposed on Chrysler

would, according to the circuit court, violate the ex post facto clauses of the United States and Wisconsin Constitutions.[9] The State appealed from the circuit court's final order, and the court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61 (1995–96).

## STATUTE OF LIMITATIONS

¶ 13. Before we proceed to the first issue presented in this case, we must decide which statute of limitations applies to the Spills Law claim, commenced on February 16, 1995.[10] The State asserts that Wis. Stat. § 893.87 (1995–96)[11] is the applicable statute of limitations in this action. It provides in pertinent part:

> **893.87 General limitation of action in favor of the state.** Any action in favor of the state, if no other limitation is prescribed in this chapter, shall be commenced within 10 years after the cause of action accrues or be barred. . . .

---

[9] Article I, § 12 of the Wisconsin Constitution provides in relevant part:

No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. . . .

Article I, § 10 of the United States Constitution provides:

No state shall. . .pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

[10] We need not decide which statute of limitations applies to the Solid Waste Law claim, since the State has exceeded all time limits in this case and seeks instead to apply the discovery rule to this cause of action.

[11] For purposes of simplicity, we use the 1995–96 version of the statutes of limitation in question. At all times relevant to this action, the substance of these statutes remained the same.

Chrysler contends that Wis. Stat. § 893.93(2)(a) (1995–96) applies to the State's claim. That statute reads in relevant part:

**893.93 Miscellaneous actions.**

. . .

 **(2)** The following actions shall be commenced within 2 years after the cause of action accrues or be barred:
 (a) An action by a private party upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor and the state, except when the statute imposing it provides a different limitation.

. . .

¶ 14. We agree with the State that Wis. Stat. § 893.87 (1995–96) is the controlling statute of limitations for the Spills Law claim. Wis. Stat. § 893.93(2)(a), on its face, applies only to *actions by a private party* for penalties or forfeitures when the action is given to the private party and the state. This is not an action by a private party.[12] There being no other statute of limitations prescribed for the State's action, the general statute of limitations for actions in favor of the State applies to the Spills Law claim. This conclusion is important for the following reason.

¶ 15. In *State v. Wisconsin Telephone Co.*, 91 Wis. 2d 702, 717–19, 284 N.W.2d 41 (1979), this court considered a statute of limitations defense in the context of a forfeiture/penalty action. Most notably, the case involved an action controlled by Wis. Stat. § 893.21(1)

---

[12] We also note that Wis. Stat. § 144.76(3) does not create a private cause of action. *See Grube v. Daun*, 210 Wis. 2d 682, 693, 563 N.W.2d 523, *amended by* 213 Wis. 2d 533, 570 N.W.2d 851 (1997).

(1975), the precursor to the statute of limitations which Chrysler proposes to be controlling here, Wis. Stat. § 893.93(2)(a) (1995–96). We held that where every day of violation of a statute constitutes a separate violation of that statute (as is the case with the penalty provision here), a cause of action accrues on each of those days of alleged violation. *See id.* at 719.

■

¶ 16. Therefore, a statute of limitations will act as a bar to any forfeiture claims which are based on violations that occurred more than, using this case as an example, 10 years prior to the date the action was commenced. *Compare id.* at 719 (concluding that Wis. Stat. § 893.21(1) (1975) barred forfeiture claims occurring more than two years prior to commencement of action). Contrary to the State's assertions, then, the State may not collect penalties for violations of the Spills Law beginning on the statute's effective date, but only for those violations which have occurred since February 16, 1985, ten years prior to the commencement of this action.[13]

---

[13] Relying upon no less weighty authority than the State's brief to this court in *State v. Mauthe,* 123 Wis. 2d 288, 366 N.W.2d 871 (1985), Chrysler asserts that penalties cannot be assessed under the Spills Law until a defendant affirmatively declines to undertake remedial action. We find no support for this position—nothing in the statute itself, Wisconsin case law, or even the State's brief in *Mauthe* suggests that this is an accurate reading of the Spills Law. To the contrary, a plain reading of Wis. Stat. § 144.76 (1977) and Wis. Stat. § 144.57 (1969) illustrates that a de facto violation of the Spills Law is sufficient to trigger penalties.

## THE SOLID WASTE LAW

¶ 17. We now turn to the first issue presented on appeal: whether the "discovery rule" should apply to the State's environmental enforcement action under the Solid Waste Law, so as to render it timely under Wis. Stat. § 893.87 (1995–96). Upon review of the application of appropriate law in granting a motion for summary judgment, we exercise a de novo standard of review. Thus, we analyze and apply the law without deference to the circuit court's conclusion of law. *See Le Fevre v. Schrieber*, 167 Wis. 2d 733, 736, 482 N.W.2d 904 (1992).

¶ 18. The discovery rule was first adopted by this court in *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983). In that case, the plaintiff (Hansen) had a Dalkon Shield intrauterine device inserted into her uterus by medical personnel. *See id.* at 552. Approximately four years later, she began to experience various health problems, which eventually prompted her doctor to remove the device. *See id.* at 552–53. Although the Dalkon Shield was removed, the plaintiff did not escape unharmed: she contracted pelvic inflammatory disease, which left her fallopian tubes blocked and rendered her sterile. *See id.* at 553.

¶ 19. The applicable statute of limitations in Hansen's subsequent personal injury action stated that actions to recover damages for injuries to the person must be commenced within three years after the cause of action accrues or be barred. *See id.* at 554. If Hansen's personal injury cause of action had accrued at the time of the negligent act—the insertion of the Dalkon Shield—her claim against A.H. Robins would have been barred. Instead, recognizing "the injustice of commencing the statute of limitations before a claimant is aware of his or her right of action," and that

"using the date of injury as the benchmark for accrual of claims can yield extremely harsh results," *id.* at 556, we adopted the discovery rule for Hansen's action and others like it. *See id.* at 560–61.

¶ 20. In adopting the discovery rule, we stated:

> In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first. All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled.

*Id.* at 560. Because Hansen could not have discovered her injury any earlier, or could not be expected to personally diagnose her condition, we held that her personal injury claim accrued in 1978, upon discovery of her medical condition. *See id.* at 561. Thus, her cause of action was timely filed.

¶ 21. The State seeks to have this same rule applied to the present cause of action: an environmental enforcement claim for violations of the Solid Waste Law which occurred in 1970, but which were not discovered until 1992. According to the State, this court has continued, without legislative direction, to expand the discovery rule since our decision in *Hansen*, and has indicated its intention to make the discovery rule applicable to other types of cases. To support this proposition, the State cites several cases, including *Claypool v. Levin*, 209 Wis. 2d 284, 562 N.W.2d 584 (1997), *Spitler v. Dean*, 148 Wis. 2d 630, 436 N.W.2d 308 (1989), *Kohnke v. St. Paul Fire Ins. Co.*, 144 Wis. 2d 352, 424 N.W.2d 191 (1988), and *Borello v. U.S. Oil Co.*,

130 Wis. 2d 397, 388 N.W.2d 140 (1986). We disagree with the State's argument and use of authority.

¶ 22. This court has recently *declined* to extend the discovery rule to causes of action not sounding in tort. *See CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 617, 497 N.W.2d 115 (1993) (holding that causes of action sounding in contract accrue at the time the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred).[14] Moreover, although several of the cases cited by the State arguably represent some "expansion" of the discovery rule, they are all cases in which the plaintiff's cause of action sounded in tort. Stated more precisely, these cases all involved claims for personal injury. *See Claypool*, 209 Wis. 2d at 287–88 (barring claim for medical malpractice); *Spitler*, 148 Wis. 2d at 631–32 (permitting intentional tort claim arising from assault and battery); *Kohnke*, 144 Wis. 2d at 355 (permitting claim for medical malpractice); *Borello*, 130 Wis. 2d at 423–24 (permitting claim for personal injury resulting from defective furnace).

¶ 23. In none of these cases did we indicate our intention to expand the discovery rule to situations arising outside of the tort context. The State brings our attention to a paragraph in *Kohnke* which states: "The plain language of the *Hansen* case did not limit its discovery rule to certain types of cases, such as medical malpractice or products liability, but was applicable to any case not 'already governed by a legislatively created discovery rule.' " *Kohnke*, 144 Wis. 2d at 361

---

[14] We also recently clarified that the judicially-created discovery rule cannot be applied to a statute of repose. *See Tomczak v. Bailey*, 218 Wis. 2d 245, 260, 578 N.W.2d 166, 173 (1998).

(quoting *Hansen*, 113 Wis. 2d at 560). The State misinterprets this statement.

¶ 24. Nothing in that paragraph purports to apply the discovery rule to situations arising outside the tort context. This is made evident by the fact that *Kohnke* involved a personal injury tort claim for damages sustained during the plaintiff, Kohnke's, childhood surgery. *See Kohnke*, 144 Wis. 2d at 356. The statement cited by the State simply reflects our conclusion that the discovery rule should apply to Kohnke's action—a claim controlled not by the medical malpractice statute of limitations, but by a personal injury statute of limitations in effect when Kohnke suffered his injury and which did not contain its own rule of discovery. *Kohnke*, 144 Wis. 2d at 359–61.

¶ 25. Nevertheless, the State attempts to analogize the social purposes underlying environmental enforcement actions to those generally served by tort law. According to the State, environmental enforcement actions are "strikingly similar" to tort claims because the actions shift the losses, in the form of injunctions to remediate the environment or forfeitures, to the party at fault for damaging the environment. Placing this cost with the law-violating party—the one most able to prevent the injury—serves to deter other would-be violators from handling or disposing of their hazardous wastes in an unsafe manner. Finally, just as in tort law, losses are distributed widely since industry considers the cost of compliance as part of the cost of doing business in Wisconsin.[15]

---

[15] For a discussion of the broad social purposes served by tort law, *see CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 610, 497 N.W.2d 115 (1993), and sources cited therein.

¶ 26. We are not persuaded by the State's analogy. Nor are we persuaded that the State's request in this case comports with our traditional understanding of the discovery rule. We now proceed to expound upon these important distinctions, and to explain our decision to defer to the legislature for adopting the discovery rule in environmental enforcement actions brought pursuant to the Solid Waste Law.

## DISCOVERY OF INJURY RULES v. DISCOVERY OF VIOLATION RULES

¶ 27. By clarifying the precise nature of the State's request in this case, we expose the first critical deviation from our traditional use and understanding of the discovery rule. A brief look at a decision of the United States Court of Appeals for the District of Columbia Circuit will make our task an easier one.

¶ 28. In *3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994), the Environmental Protection Agency (EPA) sought to assess civil penalties against 3M for violations of the Toxic Substances Control Act, 15 U.S.C. §§ 2601–2629. *See id.* at 1454. The relevant question faced by the United States Court of Appeals was whether a five-year statute of limitations began running only when EPA reasonably could have expected to detect the violations giving rise to the civil penalties. *See id.*

¶ 29. Just as the State contends here, the EPA argued that a discovery rule was needed to address the agency's difficulties in enforcing the environmental law. *See id.* at 1460. After noting the laudable purposes of a discovery of injury rule, the *3M* court illustrated that the federal courts had not limited the rule to personal injury actions. However, in those instances where the federal courts had expanded the discovery

rule outside the boundaries of tort claims, the court emphasized that "the rule has only been applied to remedial, civil claims." *Id.* (citations omitted).

¶ 30. In contrast to cases involving remedial claims, the *3M* court noted:

> [t]he rule EPA sponsors is of an entirely different sort. It is a "discovery of violation" rule having nothing whatever to do with the problem of latent injuries. The rationale underlying the discovery of injury rule—that a claim cannot realistically be said to accrue until the claimant has suffered harm—is completely inapposite. . . .In an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage. Immediately upon the violation, EPA may institute the proceeding to have the penalty imposed. . . .Because liability for the penalty attaches at the moment of the violation, one would expect this to be the time when the claim for the penalty "first accrued."

*Id.* at 1460–61. As a result, the *3M* court declined to adopt the discovery rule for the EPA's environmental enforcement action. *See id.* at 1462–63.

¶ 31. In the same way, our adoption of the discovery rule in this context would represent a dramatic departure from our previous thinking on the subject: the discovery rule would no longer be designed to offer those with latent, concealed *injuries* a chance to have their day in court. Were we to adopt the discovery rule in this case, the State would be afforded the opportunity to compel both remediation and the payment of penalties by individuals or entities whose *violations* of

a state law were not discovered within the applicable statute of limitations.

¶ 32. The State could have brought this civil penalty action under the Solid Waste Law even if the drums at the Bark River site had remained intact, without discharging hazardous wastes into the ground. All that need be proved in the Solid Waste Law claim is that a violation of state law occurred, regardless of any damage or injury to the environment. Thus, the State does not seek to apply the "discovery of injury" rule which this court has seen in the past, but rather a "discovery of violation" rule which has never before been employed in this state.

¶ 33. The State argues that it truly seeks to apply a discovery of injury rule to this case, not the discovery of violation rule encountered by the *3M* court. The State reasons that the discovery rule would not apply to this case if no leaking or discharge of hazardous substances had occurred. In other words, an "injury" or damage—which in this case, the State concedes, was the discharge of hazardous substances—is required under the State's theory in order to apply the discovery rule. It is this injury requirement that separates the present case from the *3M* scenario.

¶ 34. Although the State's theory dictates that a discharge must actually occur in order to impose remedial and punitive liability against Chrysler with help from the discovery rule, we disagree with the State's assertion that it seeks a discovery of injury rule for its Solid Waste Law claim. Neither "leaking" nor "discharge" are elements of a Solid Waste Law violation. A violation of the Solid Waste Law is complete when an entity uses unlicensed haulers or an unlicensed facility to dispose of its waste. The unlawful leaking or discharge of a hazardous substance are subsequent

violations which may be prosecuted via the Spills Law of 1978, but not, under any reading of its terms, by using the Solid Waste Law.

¶ 35. Therefore, we find it difficult to conceive how the State can employ the discovery rule to impose penalties for a violation of the Solid Waste Law when an element it concedes is necessary for its claim (discharge or leaking causing damage to the environment) is not an element of the Solid Waste Law to begin with. The only logical—indeed, legally sustainable—interpretation that remains of the State's Solid Waste Law enforcement claim is that it *does* seek a discovery of violation rule, whereby the failure to use licensed haulers or a licensed dump site is, by itself, enough to impose remedial and punitive liability against Chrysler. This new-found approach to the discovery rule is cause for consideration on several levels.

## PENALTIES UNDER THE SOLID WASTE LAW

¶ 36. To adopt the discovery rule in this instance would be to allow the State to *punish* those who violated a state law, as in this case, nearly 25 years prior to the commencement of any action by the State. As the *3M* court noted, "[f]ines, penalties and forfeitures, whether civil or criminal, may be considered a form of punishment." *3M*, 17 F.3d at 1460 (citing *Austin v. United States*, 509 U.S. 602 (1993)). Although we concede that there is, as the State emphasized at oral argument, no possibility of "jail time" for Chrysler, we conclude that Wis. Stat. § 144.57 (1969)'s authorization of penalties up to $5,000 per day serves, at least in part, to punish offenders of the Solid Waste Law. *See, e.g., State v. Peterson*, 104 Wis. 2d 616, 624, 312 N.W.2d 784 (1981) (noting that "forfeiture actions are of a hybrid nature, *i.e.*, part civil, part criminal"); *City of*

*Milwaukee v. Wuky*, 26 Wis. 2d 555, 561–62, 133 N.W.2d 356 (1965) (same). Thus, the State's attempt to impose penalties against Chrysler for a violation of the Solid Waste Law is more analogous to a criminal action than to the civil tort actions in which we have previously employed the discovery rule.[16]

¶ 37. In criminal actions, the State is ordinarily subject to a statute of limitations bar—it does not have unfettered discretion to prosecute at any time because liability for the offense attaches at the time the offense is committed. *See, e.g.*, Wis. Stat. § 939.74 (1995–96) (providing that prosecutions for felonies must be commenced within 6 years and misdemeanors within 3 years after commission of a crime, except in certain circumstances). As the United States Supreme Court concluded nearly 200 years ago, "[i]n a country where not even treason can be prosecuted after a lapse of three years, it could scarcely be supposed that an individual would remain for ever liable to a pecuniary forfeiture." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342, 2 L.Ed. 297 (1805) (Marshall, C.J.). Indeed, the inherently punitive nature of the present action increases Chrysler's need to be protected from stale claims brought decades after the violations occurred.

¶ 38. These considerations lead us to the conclusion that the State's need for an expansive period of

---

[16] The State cites two cases for the proposition that penalties are like damages because they both make the injured party whole. *See United States v. Halper*, 490 U.S. 435 (1989), *overruled by Hudson v. United States*, 118 S. Ct. 488 (1997); *United States v. Ward*, 448 U.S. 242 (1980). We are not persuaded by this argument. These cases reiterate that civil penalties have a remedial purpose of making the government whole, but do not attempt to equate penalties and damages in a comparison of tort actions with environmental enforcement actions.

limitations in this remedial and punitive action is much less critical than that we have seen with the tort victims in our previous discovery rule cases. Under these circumstances, we see no reason to respond with the unilateral imposition of an open-ended, judicially-created discovery rule that for all practical purposes would apply to every environmental enforcement action brought by the State.[17]

¶ 39. The State argues that defendants such as Chrysler will not be prejudiced in situations similar to the one at hand because the discovery rule will commence the statute of limitations when the State discovers *or with reasonable diligence should have discovered* the violation. According to the State, this standard puts a "heavy burden" on the regulatory agency to discover violations of the Solid Waste Law. We are not persuaded that the discovery standard which would require the State to exercise "reasonable diligence," *see Hansen,* 113 Wis. 2d at 560, in discovering violations of the Solid Waste Law should alter our conclusion. This argument ignores our preeminent concern with the need to protect defendants from stale claims in all cases involving violations of the Solid Waste Law, not just those in which the State should have discovered a violation, but didn't because it failed to exercise "reasonable diligence."

## ROLE OF THE LEGISLATURE

¶ 40. We acknowledge that a violation of the Solid Waste Law can be said to affect all citizens of the state of Wisconsin, such that the State commenced this

[17] In fact, were we to adopt the discovery rule in this case, we find it difficult to understand why the rule wouldn't apply generally to every forfeiture/penalty action brought by the State.

action on behalf of those "injured" citizens. Nevertheless, a request to equate the violation of state law with the concealed, latent injury of a tort victim, so as to expand the statute of limitations in this case, is one better directed to the legislature than to this court. "Wisconsin courts have traditionally held that statutes of limitation are policy considerations within the province of the legislature." *Miller v. Kretz*, 191 Wis. 2d 573, 580, 531 N.W.2d 93 (Ct. App. 1995). *See also Tomczak v. Bailey*, 218 Wis. 2d 245, 254, 578 N.W.2d 166 (1998) ("In short, the decision to close the courthouse doors on litigants with stale claims is a pure question of policy that is better left to the legislative branch of government."). Even in the context of tort actions, this court was extremely reluctant to adopt a common-law discovery rule for this very reason. *See Hansen*, 113 Wis. 2d at 556–557 (illustrating that we adopted the discovery rule for actions sounding in tort at least some 23 years, and one legislative amendment, after the problem of discovery of injury was officially noted in an opinion).

¶ 41. More importantly, the decision to adopt an open-ended discovery rule of this sort is a course of action that should be undertaken only after substantial review by the legislature. This review may reveal that the State's perceived inability to discover violations of its environmental laws and regulations is a serious problem that ought to be dealt with immediately. On the other hand, the legislature may learn that the situation presented here is a relatively uncommon one, so that no discovery rule, or perhaps a very limited one,[18] is needed.

¶ 42. As yet another option, the legislature might conclude that adopting a discovery rule would not cure

---

[18] See, for example, the legislature's choice of action in the medical malpractice context, Wis. Stat. § 893.55 (1995–96).

what it perceives to be the real problem: an ill-designed or inefficient environmental enforcement program or statute to begin with. On this point, the words of the *3M* court are once again pertinent to our discussion:

> An agency may experience problems in detecting statutory violations because its enforcement effort is not sufficiently funded; or because the agency has not devoted an adequate number of trained personnel to the task; or because the agency's enforcement program is ill-designed or inefficient; or because the nature of the statute makes it difficult to uncover violations; or because of some combination of these factors and others. . . .An agency's failure to detect violations, for whatever reasons, does not avoid the problems of faded memories, lost witnesses and discarded documents in penalty actions brought decades after alleged violations are finally discovered.

*3M*, 17 F.3d at 1461.

¶ 43. In sum, the legislature is in a better position to adopt the discovery rule for violations of the Solid Waste Law: it has the resources, the time, and the investigatory capability to review and analyze the competing interests at stake in this matter. The words of Justice Day in *State v. Mauthe*, 123 Wis. 2d 288, 302, 366 N.W.2d 871 (1985), may best summarize our reasons for leaving the choice to adopt this discovery of violation rule to the legislature:

> The manner in which our air, water and land is to be safeguarded, protected and improved is under the control of the legislature. The various laws passed and the grants of authority to state agencies is the means by which this is done. *Wisconsin Environmental Decade v. D.N.R.*, 115 Wis. 2d 381, 414,

340 N.W.2d 222 (1983). The vitally important work
of protecting the life sustaining forces around us,
collectively referred to as the environment, is basic
and fundamental to our survival. The means to
achieve these ends are not always agreed upon.
Experts often are in disagreement as to how to
achieve these results. Under our system it is the
legislature and the agencies it empowers to carry
out its mandates that bear this tremendous respon-
sibility. It is they who must resolve the conflicting
interests and approaches to specific problems.
"[T]he D.N.R. is the state agency with the staff,
sources and expertise in environmental mat-
ters. . . ." *Wisconsin's Environmental Decade*, 115
Wis. 2d at 391.

*Id.*

██

¶ 44. For the foregoing reasons, we conclude that
the discovery rule is inapplicable to the State's reme-
dial and punitive environmental enforcement action
under the Solid Waste Law. In this situation, the need
to protect defendants from stale claims outweighs any
injustice caused by barring environmental enforce-
ment actions under the Solid Waste Law prior to
discovery. Because liability for the remediation and
penalties imposed by the Solid Waste Law attached at
the moment of the violation, the claim also "accrued" at
that time, thereby rendering the State's action
untimely.[19]

---

[19] The State cites, and at times lists, a plethora of cases
from foreign jurisdictions in an attempt to persuade this court
that the discovery rule should be adopted in this case. *See*
State's Brief at 16–21. We do not find it necessary to respond to
these arguments. As we have stated, the policy behind our prior
applications of the discovery rule to tort cases involving con-
cealed, latent injuries simply does not apply to an open-ended

## THE 1978 SPILLS LAW

¶ 45. The second issue we consider is whether Wis. Stat. § 144.76(3) (1977) is applicable to post–1978 discharges of hazardous wastes resulting in part from the pre–1978 dumping of waste drums at the Bark River site, when Chrysler did not own or possess the site, but generated the wastes and failed to remediate their subsequent spillage. Once again, upon review of the circuit court's order granting summary judgment in favor of Chrysler, we exercise a de novo standard of review and apply the law without deference to the circuit court's conclusion of law. *See Le Fevre*, 167 Wis. 2d at 736.

¶ 46. Chrysler makes three primary arguments before this court relating to the Spills Law. First, Chrysler contends that the Spills Law does not allow the State to seek remediation from a party who caused a pre-Spill Law enactment discharge of a hazardous substance, but who does not currently possess or own the property which requires remediation. Second, Chrysler argues that Wis. Stat. § 144.76(3) (1977) is intended to apply prospectively. Finally, Chrysler asserts that even if the remedial provision of the Spills Law could be applied retroactively, applying its penalty and forfeiture provisions would violate the ex post facto clauses of the United States and Wisconsin constitutions. We address these arguments in turn.

discovery of violation rule for an environmental enforcement action brought under the Solid Waste Law. Because none of the foreign authority cited by the State persuades us that a different conclusion should be reached, we decline to address those cases.

## APPLICABILITY OF THE SPILLS LAW

¶ 47. Chrysler's argument regarding the applicability of the Spills Law to its conduct in this case revolves around our decision in *Mauthe*, 123 Wis. 2d 288. In *Mauthe*, the DNR discovered evidence of hazardous substance spills near a site that had been used by Wisconsin Chromium Corporation for chrome electroplating activities since 1960. *See id.* at 293. The defendant Mauthe, president of Wisconsin Chromium, had purchased the site in 1966, and leased it to the corporation. Wisconsin Chromium continued to conduct chrome electroplating activities at the location until 1976, at which time the corporation dissolved and all electroplating activities ceased. At approximately the same time, Mauthe formed his own company. *See id.*

¶ 48. Tests at and adjacent to the site revealed extensive hexavalent chromium contamination of the soil and groundwater—a hazardous substance within the meaning of Chapter 144. *See id.* at 292–93. The state sought injunctive relief as well as forfeitures from Mauthe under Wis. Stat. § 144.99 (1981–82)[20] for the violations of the Spills Law caused by chromium leakage into the soil coupled with surface water runoff and groundwater flow. *See id.* at 294.

¶ 49. We first rejected Mauthe's argument that the definition of "discharge" provided in Wis. Stat. § 144.76(1)(a) (1981–82) required some kind of human activity which results in contaminant seepage. *See id.* at 298. Because "[w]ords such as 'leaking' or 'emitting' have no apparent tie to human activity and often refer

---

[20] For purposes of this opinion, it may be assumed that the statutory provisions at issue in *Mauthe* contained the same language as the provisions at issue in this case.

to phenomena which occur absent human conduct," *id.*, we concluded that "discharge" encompasses inactive waste sites from which hazardous substances are flowing.

¶ 50. We then concluded that although he did not cause the hazardous substance spill, Mauthe could be held responsible for remediation of the spill because he owned the property in which the contaminated soil was located. In doing so, we rejected Mauthe's assertion that holding him liable under the Spills Law would violate the ex post facto clause of the Wisconsin Constitution since the electroplating activities ceased in 1976, prior to the statute's effective date. *See id.* at 300–01. We stated:

> [t]he action brought by the state relates only to the discharge from the contaminated soil located on his property and. . .does not relate to the activities which took place on his property prior to the statute's enactment. It is the abatement of this current discharge that the state is seeking. Therefore, this is not an ex post facto application of law.

*Id.* at 301–02.

¶ 51. Chrysler contends that the rationale of *Mauthe* does not apply to the current situation since Mauthe had actual possession or control of the land. In this case, Chrysler has never owned, possessed or controlled the Bark River site. We agree with this assertion. Nevertheless, Wis. Stat. § 144.76(3) (1977) imposes liability on "[p]ersons having possession of or control over a hazardous substance being discharged, *or who cause a hazardous discharge.* . . ." (Emphasis added.) The situation presented here is different from that in *Mauthe* only to the extent that a different clause of the Spills Law is being used to impose liability. The

State does not seek remediation and penalties from Chrysler because it possessed or controlled the hazardous substance after 1978, but only upon the theory that Chrysler *caused* a hazardous discharge after the Spills Law took effect.

¶ 52. Therefore, to determine whether Chrysler may be held liable in this case, we must examine both the remedial and punitive segments of the Spills Law in the context of a party who is charged for "causing" the spill. As to remediation, we conclude that the legislature intended to apply the Spills Law retroactively. As to penalties and forfeitures, we conclude that the imposition of penalties in this case does not constitute a retroactive application of the Spills Law.

### REMEDIATION AND RETROACTIVITY

¶ 53. It is a well-established rule in Wisconsin that legislation is presumed to be prospective in application unless: (1) the statute reveals by express language the legislature's intent to apply the provisions retroactively; or (2) the language reveals such intent by necessary implication. *See, e.g., Martin v. Richards*, 192 Wis. 2d 156, 199–200, 531 N.W.2d 70 (1995); *Chappy v. LIRC*, 136 Wis. 2d 172, 180, 401 N.W.2d 568 (1987); *State v. ILHR Dept.*, 101 Wis. 2d 396, 403, 304 N.W.2d 758 (1981). We conclude that Wis. Stat. § 144.76(3) (1977) reveals the legislature's intent to authorize retroactive remediation under the Spills Law by necessary implication.

¶ 54. Wisconsin Stat. § 144.76(3) (1977) requires those in violation of its provisions to "take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from any discharge to the air, lands or waters of this state." We

must presume that the legislature chose its words carefully in drafting this statute. *See, e.g., Ball v. District No. 4, Area Bd. of Vocational, Technical and Adult Educ.*, 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984). Use of the phrase "restore the environment to the extent practicable" by necessary implication reveals an intent to address past conduct. Even those whose conduct in part predated the Spills Law cannot escape liability under this provision: they must perform complete remediation of the spill site to make the environment whole again.

¶ 55. Any other interpretation or construction of this language would produce an absurd result, which this court has a duty to avoid. *See, e.g., State ex rel. Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 604, 621, 571 N.W.2d 385 (1997). If remediation under the Spills Law were to apply in a prospective fashion only, Chrysler would be liable solely for remediation of the hazardous substance spills which occurred after 1978. Even assuming that courts could ascertain the precise date upon which the barrels began discharging their hazardous substances, it would be absurd to allow Chrysler to stop short of complete remediation by focusing on that portion of the spill which represents post–1978 spillage alone.

¶ 56. Were Chrysler to do so, it would not be *restoring* the environment to the extent practicable. Therefore, we conclude that the language of Wis. Stat. § 144.76(3) (1977) necessarily implies that violators of the Spills Law are liable for complete and thorough remediation of hazardous substance spills—even those

163

spills which in part occurred prior to the statute's effective date.[21]

¶ 57. Our interpretation of the Spills Law is analogous to the interpretation that federal courts have given to the imminent hazard provision of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6973 (1994). In *United States v. Price*, 523 F. Supp. 1055 (D. N.J. 1981), *aff'd*, 688 F.2d 204 (3d Cir. 1982), the United States brought an action for injunctive relief to remedy the hazards posed by chemical dumping that occurred at a landfill in 1971 and 1972. The action was brought pursuant to, among other statutory provisions, section 7003 of RCRA.[22] *See id.* at 1057. Section 7003 became effective in 1976, several years after the dumping had occurred. *See id.* at 1070.

¶ 58. In responding to the defendants' argument that the statute should not be applied retroactively to impose liability for acts they performed in 1971 and 1972, the United States District Court stated:

---

[21] At oral argument, Chrysler argued that the State already has the power to compel remediation of the hazardous substance spills in this case by utilizing the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–75 (1994). For the sake of argument, we will assume that Chrysler's assertions regarding CERCLA law are accurate. Even so, we are not persuaded that a different conclusion should be reached in this case. Regardless of its options under federal law, the State may also compel remediation under Wis. Stat. § 144.76(3) (1977) for the hazardous substance spills that occurred at the Bark River site.

[22] The relevant provision imposed liability upon persons "contributing to" the handling, storage, treatment, transportation or disposal of hazardous waste, when those techniques "may present an imminent and substantial endangerment to health or the environment." *United States v. Price*, 523 F. Supp. 1055, 1069–70 (D. N.J. 1981), *aff'd*, 688 F.2d 204 (3d Cir. 1982).

The gravamen of a section 7003 action, as we have construed it, is not defendants' dumping practices, which admittedly ceased with respect to toxic wastes in 1972, but the present imminent hazard posed by the continuing disposal (i.e., leaking) of contaminants into the groundwater. Thus, the statute neither punishes past wrongdoing nor imposes liability for injuries inflicted by past acts. Rather, as defendants themselves argue, its orientation is essentially prospective. When construed in this manner, the statute simply is not retroactive. It merely relates to current and future conditions.

Admittedly, from a practical perspective, defendants may be compelled under our reading of the statute to remedy the continuing effects of acts they performed prior to the statute's adoption. But we do not conceive of this as contrary to the purposes of the RCRA. . . . Because the gravamen of a section 7003 action is the current existence of a hazardous condition, not the past commission of any acts, we see no retroactivity problem with the statute.

*Id.* at 1071–72 (citation omitted).

¶ 59. In *Jones v. Inmont Corp.*, 584 F. Supp. 1425, 1436 (S.D. Ohio 1984), the district court reached a similar conclusion regarding RCRA. Noting that the word "disposal" is defined by RCRA as "the discharge, deposit, injection, dumping, *spilling, leaking*, or placing of any solid waste or hazardous waste into or on any land or water so that. . .[it] may enter the environment," *see* 42 U.S.C. § 6903(3) (emphasis added), the *Jones* court concluded that RCRA "authorizes restraint of further leaking of hazardous wastes [originally disposed of in 1973 and 1974], and that the leaking need not result from any affirmative action by the defen-

dant." *Jones*, 584 F. Supp. at 1436.[23] *See also United States v. Diamond Shamrock Corp.*, 17 Env't Rep. Cas. (BNA) 1329, 1334 (N.D. Ohio 1981) ("To hold that remedial environmental statutes could or should not apply to conduct engaged in antecedent to the enactment of such statutes, when the effects of such conduct create a present environmental threat, would constitute an irrational judicial foreclosure of legislative attempts to rectify pre-existing and currently existing environmental abuses.").

## FORFEITURES AND RETROACTIVITY

¶ 60. The State's attempt to impose penalties and forfeitures in this case warrants a distinct analysis. Upon review of the language of the Spills Law and supporting material to ascertain the legislature's intent, we conclude that the State does not seek a retroactive, ex post facto application of the Spills Law.

¶ 61. Although Chrysler concedes that a hazardous substance "discharge" occurred after 1978, Chrysler argues that it did not "cause" the hazardous discharge in this case. According to Chrysler, Keller Transit caused the discharge when it dumped the waste drums at the Bark River site in 1970. Even if Chrysler did cause the discharge, it did so prior to the

---

[23] Congress has subsequently amended RCRA to make clear that the government may commence actions "against 'past or present' generators, transporters or disposers of hazardous wastes to redress any 'past or present' hazardous waste activities which may present an imminent and substantial endangerment." Joel A. Mintz, *Abandoned Hazardous Waste Sites and the RCRA Imminent Hazard Provision: Some Suggestions for a Sound Judicial Construction*, 11 Harv. Envtl. L. Rev. 247, 273 (1987). For a discussion of RCRA's imminent hazard provision, *see generally id.*

effective date of the Spills Law—again, when the drums were buried at the Bark River site in 1970. Therefore, using the Spills Law to impose liability on Chrysler in this situation would be to retroactively apply the law in violation of the ex post facto provisions of the United States and Wisconsin Constitutions.

¶ 62. We might be compelled to agree with Chrysler's argument if we agreed with its definition of the term "cause," as it is used in Wis. Stat. § 144.76(3) (1977). Under Chrysler's theory, the only cause of the hazardous substance discharge in this case was the dumping of waste drums at the Bark River site in 1970. We do not agree with this interpretation.

¶ 63. "Cause" is not defined in Chapter 144 of the Wisconsin Statutes, nor has any court in this state defined the term as it is used in this context. Therefore, we must apply the standard principles of statutory construction to determine its meaning. The goal of our examination, as usual, is to discern the intent of the legislature. *See State v. Rosenburg*, 208 Wis. 2d 191, 194, 560 N.W.2d 266 (1997).

¶ 64. To determine the intent of the legislature, a court must first look to the language of the statute. If that language clearly and unambiguously sets forth the legislative intent, it is the court's duty to apply that intent to the case at hand and not look beyond the statute's language to determine its meaning. *See N.E.M. v. Strigel*, 208 Wis. 2d 1, 7, 559 N.W.2d 256 (1997). However, if a statute is ambiguous, a court should examine the scope, history, context, subject matter, and purpose of the statute in order to determine the legislature's intent. *See State ex rel. Jacobus v. State*, 208 Wis. 2d 39, 48, 559 N.W.2d 900 (1997). A statute is ambiguous if it is capable of being understood

by reasonably well-informed persons in more than one way. *See id.*

¶ 65. In this case, we may determine the common and ordinary meaning of a word by examining the definition given by a recognized dictionary. *See Mauthe*, 123 Wis. 2d at 300. "Cause" is defined in Black's Law Dictionary as follows:

> **Cause,** *v.* To be the cause or occasion of; to effect as an agent; to bring about; to bring into existence; to make to induce; to compel.
>
> **Cause,** *n.. .* .Each separate antecedent of an event. Something that precedes and brings about an effect or a result. A reason for an action or condition. . . . An agent that brings something about. That which in some manner is accountable for condition that brings about an effect or that produces a cause for the resultant action or state.

Black's Law Dictionary at 221 (6th ed. 1990).

¶ 66. Using these accepted definitions as a guide, we address Chrysler's arguments that Keller Transit, not Chrysler, caused the discharge at the Bark River site and that if Chrysler indeed caused the discharge, it did so prior to the effective date of the Spills Law. We conclude that "cause" is capable of being understood by reasonably well-informed persons in more than one way. A person or entity can "bring about" an event not only by acting affirmatively to produce that event, but also by failing to act. Stated differently, the failure to act can be a "reason for an action or condition" and can be a necessary "antecedent of an event" in the same way that affirmative action can precede and bring about an effect.

¶ 67. Using the term "cause" in this manner, a reasonably well-informed person may conclude that Chrysler caused hazardous substance discharges *after* the Spills Law took effect by failing to remediate any and all discharge which occurred after 1978. That is, by failing each day after May 21, 1978, to clean up the hazardous waste at the Bark River site, Chrysler would thereby "cause a hazardous discharge" independent of its, or Keller Transit's, actions in 1970. As we have already held in *Mauthe*, conscious human conduct is not needed to comport with the definition of "discharge" in Wis. Stat. § 144.76(1)(a) (1977) because "[w]ords such as 'leaking' or 'emitting' have no apparent tie to human activity and often refer to phenomena which occur absent human conduct." *Mauthe*, 123 Wis. 2d at 298. Because the leaking or emitting of hazardous waste is an ongoing process that occurs absent human conduct, one may reasonably conclude that a person can cause that leaking by failing to clean up the hazardous waste it has generated.

¶ 68. Therefore, we examine factors such as the scope, history, context, subject matter and purpose of Wis. Stat. § 144.76(3) (1977) to determine whether the legislature intended the term "cause" to include both the commission and omission of an act which leads to a hazardous waste spill. In this case, the purpose of the Spills Law alone leads us to the conclusion that the legislature did intend such a result.

■

¶ 69. The purpose of Wis. Stat. § 144.76 (1977) is, as we have stated:

> to prevent, minimize, and, if necessary, abate and remedy contamination of this state's environment and the resultant risks to human health caused by

discharges of hazardous substances. The same risks
to this state's environment and to human health are
present whether or not the seepage of a hazardous
substance occurred in relation to some human
activity at the time the seepage occurred.

*Mauthe*, 123 Wis. 2d at 299. Thus, it would be inconsistent with legislative purpose to place a limitation upon the term "cause" that would restrict it to the action taken by Chrysler in 1970—action which already forms the basis for liability under the Solid Waste Law. Failing to remediate hazardous waste spills can have the same, or perhaps greater, effect as any affirmative spilling or dumping of that waste: the environment is contaminated and damaged, posing serious risks to human health. It is the legislature's purpose to abate and remedy that contamination regardless of the cause.

¶ 70. Evidence of the legislature's purpose may also be gleaned from the penalties provision of Chapter 144 as reproduced above, Wis. Stat. § 144.57 (1969). That provision, the substantial equivalent of which was in effect in 1978, indicates that "each day of continued violation is a separate offense." This provides clear evidence that the legislature recognized the ongoing nature of hazardous waste spills, and that the failure to remediate, each day, could itself be a cause of a hazardous discharge within the meaning of the Spills Law.

¶ 71. The logical counter-argument to our interpretation of the Spills Law—one that is implicit in Chrysler's argument to this court—is that Chrysler could not know of the hazardous substance spill which occurred after 1978, eight years after the waste had been removed from Chrysler's manufacturing plant.

170

Nevertheless, Wis. Stat. § 144.76(3) (1977) imposes liability upon persons causing hazardous discharges regardless of whether they knew about the discharge. If the legislature had desired to impose liability only upon those who "*knowingly* cause a hazardous discharge," it certainly could have done so.

¶ 72. Evidence of the legislature's intent *not* to require intentional causation is made apparent by looking to the Hazardous Waste Management Act, Wis. Stat. §§ 144.60–144.74 (1977), enacted by the same legislation as the Spills Law. *See* 1977 Laws ch. 377, §§ 21, 23. Specifically, § 144.74(3) indicates as follows:

> Any person who transports any hazardous waste subject to ss. 144.60 to 144.74 to a facility which the transporter *knows* does not have a license, *intentionally* disposes of any hazardous waste subject to ss. 144.60 to 144.74 without having obtained a license for disposal of hazardous wastes or *intentionally* makes any false statement or representation. . . .

(Emphasis added.) This provision—again, having been enacted by the same legislation as the Spills Law—makes clear that the legislature could have established "intent" as an element of a Spills Law violation if it had so desired.

¶ 73. Therefore, we conclude that Chrysler caused a hazardous discharge in this case after 1978 by failing to clean up the hazardous waste left at the Bark River site. Because the State does not seek penalties for Chrysler's pre–1978 conduct, but rather for Chrysler's post–1978 failure to remediate the spill alone, we are not presented with a retroactive, ex post facto application of the law.

¶ 74. Indeed, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Products*, 511 U.S. 244, 269–70 (1994). Stated differently, "[a] retroactive law 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. . . .' " *In re Estate of Bilsie*, 100 Wis. 2d 342, 357, 302 N.W.2d 508 (Ct. App. 1981) (quoting *Sturges v. Carter*, 114 U.S. 511, 519 (1885)).

¶ 75. In this case, the ongoing nature of a hazardous substance spill eliminates any concern that the State seeks to "impose a new duty" or "attach new legal consequences" to *events completed* before the effective date of the Spills Law. The hazardous discharge at the Bark River site was not a "consideration or transaction already past." Rather, as we have stated, it was an ongoing process which Chrysler continued to cause after the effective date of the Spills Law by failing to remediate the spill.[24]

---

[24] It is important to note that our interpretation of the Spills Law imposes liability that is no more wide-reaching than that imposed by *Mauthe*, 123 Wis. 2d 288. *Mauthe* illustrates that a property owner is liable under the law merely by owning the property upon which hazardous wastes are located, regardless of the owner's connection to, or knowledge of, the wastes. *See id.* at 301. In the present case, our interpretation of the Spills Law clarifies that the State may also allocate responsibility for environmental investigations, remediation and penalties to more culpable parties such as Chrysler.

¶ 76. In sum, we conclude that the remedial portion of Wis. Stat. § 144.76(3) (1977) was intended to have both retroactive and prospective application. Therefore, Chrysler is liable for complete remediation of the hazardous substance spill in this case, even if the leaking had in part occurred before the Spills Law took effect.

¶ 77. We further conclude that Chrysler caused the discharge at issue after the Spills Law took effect in 1978, irrespective of Chrysler's activities prior to that date. Therefore, because Chrysler generated the hazardous substances,[25] and caused their discharge after 1978 by failing to remediate, it is liable for penalties for each day of violation by failure to remediate.

¶ 78. There being no genuine issue of fact that remains for trial, we conclude that summary judgment was properly granted in favor of Chrysler on the Solid Waste Law claim. Accordingly, we affirm the order of the circuit court on this issue. Because we affirm the circuit court's order, we need not address Chrysler's argument that the Solid Waste Law was not intended to apply to Chrysler and that the law exceeded the DNR's rule-making authority. However, we reverse the order of the circuit court granting summary judgment in favor of Chrysler on the Spills Law claim and conclude that summary judgment should be granted in favor of the State on this issue.[26]

---

[25] "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." *Cox v. Hart*, 260 U.S. 427, 435 (1922).

[26] We note the following assertion by Chrysler in its brief: "In the event this Court reverses *either* holding of the trial court, the action must be remanded for further proceedings regarding the other defenses raised by Defendant-Appellant [sic] below."

¶ 79. Accordingly, Chrysler is compelled to complete remediation of the Bark River site, conduct an investigation to determine the location of any and all other unlicensed sites in Wisconsin at which its solid and hazardous wastes from its Hartford, Wisconsin, plant were disposed and to submit both the results of that investigation, and if necessary, a remediation plan, to the DNR.

¶ 80. The cause is remanded to the circuit court in order to assess the penalties authorized by Wis. Stat. § 144.57 (1969) and subsequent versions of that same statute from February 16, 1985, until the date that remediation was commenced by Chrysler in December 1993. As mentioned, § 144.57 (1969) provides a forfeiture range of $10 to $5,000 for each day of violation. "This reflects the legislature's intention to give the trial court *a wide range of discretion* in fixing the amounts of forfeitures for ch. 144 violations." *State v. Schmitt,* 145 Wis. 2d 724, 734, 429 N.W.2d 518 (Ct. App. 1988) (emphasis added).

██

¶ 81. There are no statutorily mandated factors which the circuit court must consider. *See id.* at 730 (discussing Chapter 778 of the Wisconsin statutes, which sets forth the appropriate procedures for the collection of forfeitures). Instead, "the trial court is permitted to use the limits provided by sec. [144.57] to fashion an appropriate forfeiture based on the facts of the individual case." *Id.* at 735. The following are some of the factors which the circuit court should consider in

Chrysler Brief at 40–41 (emphasis added). Although we reverse the circuit court's order on the Spills Law claim, we can identify no additional defenses to the Spills Law claim that were left unaddressed and which would necessitate remanding this case for trial on that issue.

this case: (1) Chrysler's cooperation with the DNR in remediating the Bark River site thus far, including removal of the buried waste drums and remediation of the contaminated soil; (2) Chrysler's initiation of remedial activities without being compelled to do so by the DNR via judicial or administrative enforcement procedures; (3) the environmental harm caused; and (4) the degree of Chrysler's culpability in this matter—not for its violations of the Solid Waste Law in 1970, but for its violations of the 1978 Spills Law alone.

*By the Court.*—The order of the circuit court is affirmed in part and reversed in part. The cause is remanded to the circuit court for further fact-finding, if necessary, and for the assessment of penalties against Chrysler Corporation in a manner consistent with this opinion.

¶ 82. WILLIAM A. BABLITCH, J. (*concurring in part and dissenting in part*). Because I conclude that this court should extend the discovery rule to actions brought to enforce Wisconsin's Solid Waste Law, I respectfully dissent.

¶ 83. In 1970, Chrysler Corporation knowingly violated the State's law with respect to disposal of solid wastes. Chrysler received the State of Wisconsin Solid Waste Disposal Standards (effective May 1, 1969) on December 15, 1969 but did not hire a licensed hauler until some time in the early 1970s. The regulations, Wis. Admin. Code ch. 51, clearly and unambiguously required that generators of solid waste such as Chrysler dispose of their waste: a) at a licensed facility, or b) by a licensed hauler.

¶ 84. Chrysler did neither.

175

¶ 85. Instead, Chrysler hired an unlicensed hauler to transport over 400 drums of waste, including hazardous substances, for disposal. Evidence in the record indicates that Chrysler knew that the waste disposal hauler was not licensed, and further knew that the regulations forbade their activities.

¶ 86. The buried drums were not unearthed and discovered until 1992 when the site was excavated. I agree with the State that "[i]t would be an injustice to apply the statute of limitations to bar the State from prosecuting the defendants when the State had absolutely no ability to identify the violations, to identify the defendants, or to assess the damage to the environment prior to discover of the barrels." State's Brief at 21–22.

¶ 87. I dissent because I believe that the discovery rule should apply to enforcement actions of the Solid Waste Law provided for in Wis. Stat. § 144.43 (1969) and Wis. Admin. Code § RD 51.05–51.06. Extending the discovery rule is the proper result in this case because: 1) a violation of the Solid Waste Law and resultant liability bears a far closer resemblance to an analysis of a tort of negligence, to which the discovery rule applies, than it does to a contract analysis, to which the discovery rule does not apply; 2) applying the discovery rule to violations of the Solid Waste Law fits squarely with this court's rationale extending the discovery rule to torts in *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983), *Spitler v. Dean*, 148 Wis. 2d 630, 436 N.W.2d 308 (1989), and *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986); 3) Chrysler's violation of the Solid Waste Law includes aspects similar to fraud—a cause of action to which the discovery rule statutorily applies; and 4) other states

have extended the discovery rule to enforcement of similar environmental statutes.

## I.

¶ 88. Extending the discovery rule to violations of the Solid Waste Law, Wis. Stat. § 144.43 and Wis. Admin. Code §§ RD 51.05–51.06 is logical because of the close resemblance that violations of the Solid Waste Law and resultant liability have to a classic tort analysis. This court declined to extend the discovery rule to a contract case, holding that a cause a action accrues when the contract is breached regardless of whether the party knew or should have known of the breach. *See CLL Associates v. Arrowhead Pacific*, 174 Wis. 2d 604, 617, 497 N.W.2d 115 (1993). But a violation of the Solid Waste Law bears no resemblance to a contract case. It bears striking resemblance to a negligent tort case.

¶ 89. A person is liable for negligence if that person has a duty, he or she breaches that duty, the breach in fact causes harm (cause-in-fact), and public policy considerations do not preclude imposing liability. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 732–37, 275 N.W.2d 660 (1979).

¶ 90. In Wisconsin everyone has a duty of due care to the whole world. "The test of negligence is whether the conduct foreseeably creates an unreasonable risk to others. [Citations omitted.] The risk need not be to the particular plaintiff. The test is whether unreasonable risk to the world at large is created by the conduct." *Morgan*, 87 Wis. 2d at 732 (citations omitted).

¶ 91. Chrysler, as a corporate citizen of Wisconsin, had a duty of due care to the whole world. Chrysler's conduct—contracting with an unlicensed

hauler to remove drums containing hazardous substances, foreseeably created an unreasonable risk to the citizens of the State of Wisconsin. Chrysler's duty to refrain from such conduct was codified as the Wisconsin Solid Waste Law at Wis. Stat. § 144.43 and in regulations promulgated as Wis. Admin. Code §§ RD 51.05–51.06.

¶ 92. Chrysler breached its duty to the State of Wisconsin and its citizens when it hired an unlicensed hazardous waste hauler in violation of Wis. Admin. Code § RD 51.05. The record shows that after the Wisconsin legislature enacted the Solid Waste Law and promulgated regulations, Chrysler nonetheless persisted in contracting with a unlicensed waste hauler to remove hazardous waste from its facility.

¶ 93. The third aspect of negligence law is whether the defendant's breach of its duty of due care caused harm, a question generally left for the jury.

> Legal cause in negligence actions is made up of two components, cause-in-fact and 'proximate cause,' or policy considerations. [Citations omitted.] The test of cause-in-fact is whether the negligence was a 'substantial factor' in producing the injury. [Citations omitted.] Under this test, there can be more than one substantial factor contributing to the same result and thus more than one cause-in-fact.

*Morgan*, 87 Wis. 2d at 735 (citations omitted).

¶ 94. Chrysler's "negligence," illegally contracting with an unlicensed hauler which, in turn, dumped the drums at an unlicensed site, was a substantial factor in producing the harm—an environmental nightmare. But for Chrysler's illegal actions in 1970 and its continued failure to clean-up

the site, the soil and ground water at the Bark River site would be free from contamination.

¶ 95. If the present case were one for negligence, a court might conclude that public policy precludes holding Chrysler liable even though Chrysler breached its duty by illegally dumping hazardous waste and this breach was cause-in-fact of injury to the environment.

> Some of the public policy reasons for not impos-ing liability despite a finding of negligence as a substantial factor producing injury are: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpabil-ity of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negli-gence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Id.* at 737 (citations omitted). Generally an appellate court does not address the public policy issues before a jury determines the negligence and cause-in-fact issues. *See id.* at 738. However, where the " 'question of public policy is fully presented by the complaint and demurrer,' " the court may determine the public policy issue based on the pleadings. *Id.*

¶ 96. If the present case were one for negligence, I believe that none of the public policy considerations would preclude holding Chrysler liable. Chrysler's actions so directly caused the environmental damage that, even though it was more than 20 years ago when Chrysler violated the Solid Waste Law, the injury is not too remote from Chrysler's actions. Without regard

to the consequences, Chrysler violated the law. By contracting with an unlicensed hauler, Chrysler had to realize that the hauler might well dump the hazardous waste at an unlicensed site, thereby evading state inspectors or other enforcement mechanisms. In retrospect, it is not extraordinary that Chrysler's actions would bring about environmental damage. Chrysler allowed over 400 drums, some containing hazardous waste, to be dumped at an unlicensed waste site. Of course, over time this would cause environmental damage. Holding Chrysler liable would not be unduly burdensome. Chrysler was directly "responsible for the satisfactory collection and transportation of all solid waste accumulated at that premises." Wis. Admin. Code § RD 51.05.

¶ 97. The Solid Waste Law enforcement action in the present case bears a close resemblance to a classic negligence action; for the same reasons we chose to adopt the discovery rule in tort actions, we should adopt it here.

## II.

¶ 98. Applying the discovery rule to violations of the Solid Waste Law fits squarely with this court's rationale in *Hansen*, adopting the discovery rule for tort causes of action. Violation of the Solid Waste Law is so akin to the tort of negligence, as discussed in part I of this dissent, that it logically follows to extend the discovery rule to violations of the Solid Waste Law.

¶ 99. The discovery rule applies to "all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen*, 113 Wis. 2d at 560. The discovery

rule requires not only discovery of injury "but also that the injury was probably caused by the defendant's conduct or product." *Borello*, 130 Wis. 2d at 411 (footnote omitted). A plaintiff's cause of action does not accrue until the plaintiff "knew the identity of the defendant, or in the exercise of reasonable diligence, should have discovered the identity of the defendant." *Spitler*, 148 Wis. 2d at 636.

¶ 100. This court extended the discovery rule to torts because we recognized that in some instances, "negligence may cause an injury which is initially latent. Such an injury may not be discovered until it is manifested at a later date." *Hansen*, 113 Wis. 2d at 555. Not applying the discovery rule could have extremely harsh results, punishing blameless victims for any delay in bringing a claim while rewarding defendants by barring meritorious claims. *See id.* at 556, 559.

> Although theoretically a claim is capable of enforcement as soon as the injury occurs, as a practical matter a claim cannot be enforced until the claimant discovers the injury and the accompanying right of action. In some cases the claim will be time barred before the harm is or could be discovered, making it impossible for the injured party to seek redress.

*Id.* at 559.

¶ 101. Violations of Wisconsin's Solid Waste Law can result in just as much of a latent injury as can be caused by a tort such as medical malpractice. There is a certain similarity between the injury to Mother Earth caused by illegally dumping drums of hazardous waste and an injury to a person caused, for example, by leaving a sponge in a person during surgery. Just as we do not allow a negligent tort-feasor to bury its mistake

and escape liability on the ground that the tort was discovered "too late," so too we should not allow a corporate citizen to bury its waste and escape liability on the ground that the violation was discovered "too late."

¶ 102. Chrysler relies on this court's decision in *CLL*, 174 Wis. 2d 604, to argue that the discovery rule should not be extended to claims under the Solid Waste Law. Chrysler asserts that the State, in its enforcement role, is more similar to a contract claimant than a tort claimant. Chrysler also argues the State is not akin to a hapless tort victim, but is more like a criminal prosecutor in that the State seeks to impose penalties and forfeitures to protect the public interest. The majority also cites *CLL* as an example of this court declining to extend the discovery rule. *See* majority op. at 148.

¶ 103. I believe that *CLL* is inapposite to the present case. In *CLL*, the court recognized that the *Hansen* court balanced the conflicting public policy concerns raised by statutes of limitations and concluded that protecting meritorious tort claims outweighed the policy of preventing stale or fraudulent claims. *See CLL*, 174 Wis. 2d at 610 (referring to *Hansen*, 113 Wis. 2d at 560). The court in *CLL* weighed these same policy considerations in the contract context and determined that "public policy favors the current rule that the contract statute of limitations begins to run at the time of the breach." *Id.* at 611.

¶ 104. Weighing these same policy considerations, I believe that a Solid Waste Law enforcement action is far more akin to a tort than contract and, on balance, public policy favors extending the discovery rule. On one hand, a statute of limitations is meant to discourage stale and fraudulent claims. Corporate records may be lost or destroyed and personnel may be

long gone. However, the test under the discovery rule is that the cause of action accrues when the plaintiff discovers or *should have discovered* the harm. The State's enforcement action would be barred if it should have discovered the violation earlier and the statute of limitations has expired. Also, in a Solid Waste Law enforcement action, the State has the burden to prove its allegations. The State may simply be unable to prove the alleged violations if there is insufficient evidence because the violation happened so long ago.

¶ 105. The competing public policy is protecting meritorious claimants who have been as diligent as possible. When Chrysler contracted with an unlicensed hauler, which in turn dumped the hazardous waste at an unlicensed waste site, there was no possibility that the DNR could have detected the violation absent some outside action such as self-reporting or, as actually occurred, excavation of the waste site. It is impossible for the DNR to inspect every acre of land in the state to monitor possible environmental violations.

¶ 106. On balance, the State, which has been as diligent as possible, should have an opportunity to seek redress for Chrysler's violations of the Solid Waste Law. Any other outcome works a harsh result and injustice on the State and its citizens.

¶ 107. Chrysler argues that the State has control to detect violations of the Solid Waste Law because it can determine standards as needed to enforce the law. While the State does have authority to promulgate the necessary regulations, this does not garner an amount of control over the risk of loss similar to that which a contracting party has in drafting a contract and benefiting from a bargain.

¶ 108. A Solid Waste Law enforcement action is nothing like a contract action. A contract is "an agree-

ment between two or more persons which creates an obligation to do or not to do a particular thing." *Black's Law Dictionary*, at 322 (6th ed. 1990). Under the Solid Waste Law, there is no agreement between any parties. Rather, companies such as Chrysler have an obligation to do or refrain from doing a particular thing because the legislature has expressed public policy by enacting a statute regarding certain conduct.

¶ 109. Chrysler further argues that the discovery rule should not apply to this case, in which the government is requesting civil penalties, because the public policy concerns surrounding the statute of limitations is different in penalty cases than in damages cases, such as tort.[1] To the contrary, the public policies regarding statutes of limitations are the same for all statutes of limitations. *See, e.g., Korth v. American Family Ins. Co.*, 115 Wis. 2d 326, 332, 340 N.W.2d 494 (1983) ("[S]ec. 893.54, the three-year statute of limita-

---

[1] Some federal jurisdictions that have applied the discovery rule to an environmental action for civil penalties have declined to extend the rule to the equitable relief of an injunction. *See Reichelt v. U.S. Army Corps of Engineers*, 969 F. Supp. 519, 521 (N.D. Ind. 1996); *U.S. v. Hobbs*, 736 F. Supp. 1406, 1410 (E.D. Va. 1990). Whether a claim for injunctive relief is barred is a determined under the doctrine of laches. *See Reichelt*, 969 F. Supp. at 521. "Laches requires dismissal if a party did not pursue the case diligently and the other party is prejudiced." *Id.* (citations omitted); *see also Hobbs*, 736 F. Supp. at 1410 (citing *Benedict v. City of New York*, 250 U.S. 321, 328 (1919)).
I need not determine whether the State's request for relief in the form of an injunction is barred by the statute of limitations or doctrine of laches. The injunctive relief available under the Solid Waste Law, cleaning up the illegally dumped drums, has already been completed. The remediation left to be completed, cleaning up the soil and ground water contamination, is actionable under the Wisconsin Spills Law.

tions, is, *like all statutes of limitations*, designed to ensure prompt litigation of valid claims and to protect the defendant from fraudulent or stale claims brought after memories have faded or evidence has been lost." (emphasis added)). I discern that Chrysler's assertion stems from the fact that different statutes of limitation apply to claims for penalties and claims for damages. *See, e.g., Open Pantry Food Marts v. Falcone*, 92 Wis. 2d 807, 810–13, 286 N.W.2d 149 (Ct. App. 1979) (applying a two-year statute of limitations to penalty provisions of the Wisconsin Antitrust Law, but applying a six-year statute of limitations to the remedial provisions of the Wisconsin Antitrust Law). The underlying policies, however, are the same.

¶ 110. Chrysler and the majority also rely heavily on the District of Columbia Circuit Court of Appeals' decision in *3M v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) for its conclusion that the discovery rule does not apply to environmental enforcement actions. I reject the *3M* case. Its rationale is based on an unfounded and erroneous premise: "The 'discovery rule' rests on the idea that plaintiffs cannot have a tenable claim for the recovery of damages unless and until they have been harmed." *3M*, 17 F.3d at 1460.

¶ 111. In *Hansen*, this court made clear that plaintiffs cannot have a tenable tort claim unless and until they have discovered their injury or harm. *See Hansen*, 113 Wis. 2d at 560. The plaintiff suffers harm, however, at the time that "both a negligent act and the accompanying injury have occurred." *Id.* at 554. The discovery rule provides that even though the plaintiff's injury, i.e., the harm, may have occurred long ago, the cause of action does not accrue until the injury is discovered. In contrast, the *3M* court incorrectly began with the premise that the plaintiff does not have a

tenable claim until the plaintiff is harmed. *See 3M*, 17 F.3d at 1460. This is not the discovery rule. Rather, this is the statement of law without the adoption of the discovery rule. *See Hansen*, 113 Wis. 2d at 554 ("Therefore, we have held that tort claims accrue on the date of injury.").

¶ 112. Having begun with a faulty premise, the analysis of the *3M* court is also necessarily faulty. The *3M* court referred to the EPA's proposal to extend the discovery rule to violations of the Toxic Substances Control Act (TSCA) as a "discovery of violation" rule "having nothing whatever to do with the problem of latent injuries. The rationale underlying the discovery of injury rule—that a claim cannot realistically be said to accrue until the claimant has suffered harm—is completely inapposite." *See 3M*, 17 F.3d at 1460.

¶ 113. The *3M* court was correct to point out that in the EPA's imposition of civil penalties to enforce the TSCA, "the government's burden is to prove the violation [of the TSCA]; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage." *3M*, 17 F.3d at 1460. Similarly, in imposing civil penalties under Wisconsin's Solid Waste Law, the DNR need not prove that the illegally dumped drums of hazardous waste leaked and caused environmental damage. The DNR only needs to prove that the provisions of the Solid Waste Law were violated—that is, that Chrysler failed to use a licensed waste hauler or failed to ensure the waste was dumped at a licensed waste facility. *See* Wis. Admin. Code §§ RD 51.05–51.06.

¶ 114. In this case the violative act, using an unlicensed waste hauler to haul drums containing hazardous substances to an unlicensed waste facility, occurred in early 1970. The harm or injury—the viola-

tion of the Solid Waste Law—occurred at that time. However, like a tort in which the injury is initially latent, the DNR did not and could not discover the violation of the Solid Waste Law until the harm was manifested at a later date, when the drums were uncovered in 1992. It was at that time that the State's cause of action accrued. And it was at that time that the statute of limitations began to run. Accordingly, I conclude that the State timely filed its claim.

### III.

¶ 115. A further basis for extending the discovery rule to Solid Waste Law enforcement actions is that this case is closely akin to fraud cases to which the discovery rule is statutorily applied.

¶ 116. In common law fraud cases, the statute of limitations begins to run " '[w]hen the information brought home to the aggrieved party is such as to indicate where the facts constituting the fraud can be effectually discovered upon diligent inquiry. . . .' " *Koehler v. Haechler*, 27 Wis. 2d 275, 278, 133 N.W.2d 730 (1965) (citation omitted). Once a party is in possession of essential facts that would, upon diligent inquiry, disclose fraud, the party has a duty to make such inquiry. *See id.* If the party fails to make a diligent inquiry within a reasonable time, the party is nevertheless charged with knowledge of all facts which he or she may have learned through diligent inquiry. *See id.* Like the discovery rule articulated in *Hansen*, under the statutory discovery rule in fraud, the cause of action accrues and the statute of limitations begins to run only when the plaintiff discovers or with due diligence could have discovered the injury or harm. *See Koehler*, 27 Wis. 2d at 278; *Hansen*, 113 Wis. 2d at 560.

¶ 117. The legislature, in its wisdom, extended the discovery rule to fraud because, where a party knowingly makes a false representation, the injured party generally has no way of detecting the falsehood except by some fortuitous event.

¶ 118. In this case, the State does not claim fraud; yet Chrysler knowingly and intentionally contracted with an unlicensed waste hauler. Taking a "see no evil, hear no evil" approach, Chrysler argues that it did not know that the hauler would bury the waste, ergo no fraud. But Chrysler's actions come perilously close to fraud. Having contracted with an unlicensed hauler, Chrysler should be held to know that this unlicensed hauler might well dump the hazardous waste in an unregulated, unlicensed landfill, and that environmental damage was the likely result. I conclude that the mere fact of knowingly violating the law by hiring an unlicensed hauler should subject Chrysler to the same penalty, i.e., a discovery rule, as if they knew the waste was being intentionally hidden. Chrysler should be held to know. Chrysler should not be able to escape liability for penalties because "they didn't know." Far more plausible is the explanation that they did not want to know.

## IV.

¶ 119. Finally, an extension of the discovery rule to violations of the Solid Waste Law would mirror other jurisdictions which have extended the discovery rule to similar statutes.

¶ 120. The State of Washington imposes a two-year statute of limitations on environmental actions in which the State seeks to impose a forfeiture or penalty. *See U.S. Oil Refining Co. v. State, Dept. of Ecology*, 633 P.2d 1329, 1331 (Wash. 1981) (referring to Revised

Code of Washington (RCW) 4.16.100(2)). However, the discovery rule in Washington provides that "a statute of limitations does not begin to run until the plaintiff, using reasonable diligence, would have discovered the cause of action." *U.S. Oil*, 633 P.2d at 1333 (citations omitted). In *U.S. Oil*, the state's Department of Ecology (DOE) alleged that U.S. Oil violated its waste discharge permit under the Washington version of the Clean Water Act (CWA). The court concluded:

> Since U.S. Oil did not properly report its discharges, discovery of the violations was delayed until DOE suspected that monitoring reports were inaccurate and investigated. Without a discovery rule, industries can discharge pollutants, and by failing to report the violation, can escape penalties.

*Id.* at 1333–34.

¶ 121. Like this court in *Hansen*, the Washington Supreme Court extended the discovery rule by balancing the competing public policies raised by a statute of limitations: prohibiting stale and fraudulent claims and allowing meritorious claims. "That balancing test has dictated the application of the [discovery] rule where the plaintiff lacks the means or ability to ascertain that a wrong has been committed." *Id.* at 1334.

> [I]f the [discovery] rule were not applied the plaintiff would be denied meaningful opportunity to bring a suit. . . .Not applying the rule in this case would penalize the plaintiff and reward the clever defendant. Neither the purpose for statutes of limitation nor justice is served when the statute runs while the information concerning the injury is in the defendant's hands.

*Id.* Applying a discovery rule to environmental enforcement actions "discourages the government from

unreasonably delaying in bringing actions, while protecting the public from harm resulting from an inability to prosecute claims for violations that could not reasonably have been discovered." *U.S. v. Aluminum Co. of American*, 824 F. Supp. 640, 646 (D.C. Tex. 1993) (citing *U.S. v. Winward Properties, Inc.*, 821 F. Supp. 690, 694 (N.D. Ga. 1993)).

¶ 122. The State points to several other jurisdictions that have extended the discovery rule to environmental enforcement actions. *See Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64 (3rd Cir. 1990); *U.S. v. Winward Properties, Inc.*, 821 F. Supp. 690 (N.D. Ga. 1993); *Reichelt v. U.S. Army Corps of Engineers*, 969 F. Supp. 519 (N.D. Ind. 1996); *Atlantic States Legal Found. V. Al Tech Specialty*, 635 F. Supp. 284 (N.D. N.Y. 1986); *Aluminum Co. of America*, 824 F. Supp. 640; *U.S. v. Hobbs*, 736 F. Supp. 1406 (E.D. Va. 1990).

¶ 123. These cases cited by the State involved alleged violations of the federal Clean Water Act (CWA), and usually the entity bringing suit discovered the violations through information reported by the defendant, as required by reporting provisions of the statute. Like the Wisconsin Solid Waste Law, an injury in the traditional sense of the word is not an element of violating the Clean Water Act. Like the Wisconsin Solid Waste Law, mere violation of the Clean Water Act's provisions triggers enforcement of the statute. Like the Wisconsin Solid Waste Law, the enforcing agency may impose penalties for violations of the Clean Water Act. Like the Wisconsin Solid Waste Law, violations of the Clean Water Act are difficult to discover and may be discovered long after the violation occurs. However, unlike the majority's decision in this case to not extend the discovery rule to violations of the Solid

Waste Law, federal courts have extended the discovery rule to violations of the Clean Water Act.

¶ 124. "[A] statute of limitations must be 'interpreted in light of the general purposes of the statute and its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought.' " *Aluminum Co. of America*, 824 F. Supp. at 644–45 (quoting *United States v. Core Laboratories, Inc.*, 759 F.2d 480, 481–82 (5th Cir. 1985)). Extending the discovery rule to violations of the CWA is consistent with the Act's purpose to "protect human health, welfare, and the environment, to eliminate the discharge of all pollutants to waters of the United States, and to restore the chemical, physical, and biological integrity of the Nation's waters." *Id.* at 645 (citing 33 USC § 1251(a)).

¶ 125. Without the discovery rule, the entity violating the CWA would benefit from the EPA's inability to inspect and immediately discover violations—a result which would frustrate the purposes of the CWA. *See id.* at 647. Without the discovery rule, polluters would be encouraged to hide violations until the statute of limitations expires. *See Reichelt*, 969 F. Supp. at 522. Accordingly, a cause of action under the CWA for civil penalties does not accrue when violations of the act actually occur, but rather when the violations are discovered. *See, e.g., Reichelt*, 969 F. Supp. at 522; *Aluminum Co. of America*, 824 F. Supp. at 647; *Hobbs*, 736 F. Supp. at 1409.

> It would have been practically impossible for the plaintiff to have discovered the alleged violations of the defendant on its own. It is only when reports are filed with the E.P.A. that the public becomes aware

that violations have occurred. To hold that the statute begins to run when violations actually occur, as opposed to when they are discovered, would impede, if not foreclose, the remedial benefits of the statute.

*Atlantic States Legal Found.*, 635 F. Supp. at 287–88 (citations omitted) (regarding citizens suit under the CWA).

¶ 126. The Wisconsin legislature expressed the purpose of the Wisconsin Solid Waste Law in a Statement of Policies and Purposes included in the enacting statute:

> (2) Inefficient and improper methods of waste disposal have caused an ever increasing pollution of our vital air, land and water resources threatening the utility of our resources and the quality of the environment in which we live. The problems of waste disposal endanger the public health, safety and welfare, create public nuisances, result in scenic blight and adversely affect land values.
>
> (3) The close interrelationship of air, land and water pollution requires concerted action to prevent the worsening of these problems. . . .Immediate remedial action is needed to protect our valuable resources.
>
> (4) It is the purpose of this act to grant the necessary powers to organize a comprehensive program to enhance the quality, management and protection of the state's air and land resources.

§ 1, ch. 83, Laws of 1967. This legislative intent was repeated as a Preamble to the Department of Natural Resources Solid Waste Disposal Standards, a copy of which Chrysler received on December 15, 1969. As expressed by the legislature, the purpose of the Wisconsin Solid Waste Law is to prevent environmental pollution and to remediate existing problems. As the

court expressed in *Aluminum Co. of America* with regard to the CWA, extending the discovery rule to violations of the Solid Waste Law is consistent with the statute's purpose.

¶ 127. For all of the above reasons, I respectfully dissent to that part of the majority opinion that fails to extend the discovery rule to violations of the Wisconsin Solid Waste Law.

¶ 128. JANINE P. GESKE, J. *(concurring in part and dissenting in part)*. I join the majority's holding with regard to the Solid Waste Law, and I concur in the mandate permitting remediation under the Spills Law. I dissent to that part of the majority opinion holding that the Spills Law is applicable to actions by the State to impose forfeitures for hazardous substance spills which were initially caused in part by actions preceding the statute's effective date, and which continue to discharge after that date. This holding allows the State to penalize actors for conduct that was legal at the time it occurred, and in my view violates the Ex Post Facto clause of the United States and Wisconsin Constitutions.[18]

¶ 129. In 1969, pursuant to Wis. Stat. § 144.43 (1967), the Solid Waste Law, the DNR promulgated

---

[18] Article I of the United States Constitution provides:

Section 10. No State shall. . .pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

Article I of the Wisconsin Constitution provides:

**Attainder; ex post facto; contracts.** Section 12. No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption of blood or forfeiture of estate.

standards for the disposal of hazardous substances. The DNR rules made owners and occupants of a premises responsible for the collection of all solid waste accumulated at the premises, and for the waste's proper disposal at a licensed facility. In the alternative, the owners and occupants could arrange with a licensed transporter to convey their solid wastes to a proper facility. *See* Wis. Admin. Code §§ RD 51.05–.06 (1969). Violators of the Solid Waste Law were subject to penalties, pursuant to Wis. Stat. § 144.57 (1969).

¶ 130. For the first half of 1970, Chrysler contracted with Keller Transit to remove and dispose of drums containing manufacturing waste. Keller was not a licensed transporter. Keller dumped and buried the drums. Eight years later, the Spills Law, Wis. Stat. § 144.76, became effective, providing that persons having possession of or control over a hazardous substance being discharged, or who cause a hazardous discharge, shall take actions necessary to restore the environment and to minimize the harmful effects of any discharge. Persons violating the Spills Law were also subject to the penalty provisions of Wis. Stat. § 144.57. The drums buried by Keller were not discovered until late 1992, and were found to have leaked hazardous substances. The State seeks penalties against Chrysler for every day of violation of the Solid Waste Law in 1970,[2] and for every day of violation of the Spills Law since May 21, 1978.

---

[2] There is no dispute that the Solid Waste Law also permits the State to seek remediation of the site in the form of removing the hazardous material. Beginning in late 1993, Chrysler excavated the site and removed 401 drums. Chrysler also remediated the contaminated soil, but thus far has not remediated the contaminated groundwater.

¶ 131. The majority opinion holds that "[a]s to remediation, we conclude that the legislature intended to apply the Spills Law retroactively. As to penalties and forfeitures, we conclude that the imposition of penalties in this case does not constitute a retroactive application of the Spills Law." Majority op. at 161–62. These conclusions are inconsistent, at best. This is particularly true when both provisions apply to the same conduct.

¶ 132. I do not believe that the majority has adequately analyzed whether either the remedial or the punitive portion of the Spills Law can be applied retroactively under the retroactivity analysis test set out by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), as clarified by *Lindh v. Murphy*, 117 S. Ct. 2059 (1997).[3] I believe that such an analysis would result in the conclusion that the legislature intended the remedial portion of the Spills Law to apply retroactively, therefore I agree with the majority's ultimate conclusion on that point. I do not believe, however, that such an analysis would result in the conclusion that the legislature intended the penalty assessment portion of the Spills Law to apply to past conduct. Despite the assertions of the

---

[3] In deciding that application of the penalty provision of the Spills Law in this case is not retroactive, and thus is not unconstitutional, the majority quotes *Landgraf v. USI Film Products*, 511 U.S. 244, 269–70 (1994), "a statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." This single reference to the retroactivity analysis of *Landgraf* is insufficient to support the majority's conclusion.

majority, the penalties it allows against Chrysler here are based on pre-Spills Law conduct, and are unconstitutional.

¶ 133. The Supreme Court recently described why our citizens and institutions disfavor retroactive application of laws, particularly those which impose penalties:

> [T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. . . . It is therefore not surprising that the antiretroactivity principle finds expression in several provisions of our [national] Constitution. . . . These provisions demonstrate that retroactive statutes raise particular concerns. The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals. . . .

*Landgraf,* 511 U.S. at 265–67 (1994) (citations omitted).

¶ 134. The *Landgraf* analysis, as clarified by *Lindh,* involves three steps. First, the court must consider whether the legislature has clearly expressed an intention in the statutory text that the benefits of retroactivity outweigh the disadvantages, and that the statute should apply to conduct occurring before its enactment. *See Landgraf,* 511 U.S. at 257, 268. If there is no express statement of retroactivity in the statute,

the court will employ traditional rules of statutory construction to determine whether application of the statute would have a retroactive effect. *See Lindh*, 117 S. Ct. at 2063. If after applying rules of construction and interpretation the court finds there would be a retroactive effect, *Landgraf's* default rule, or the presumption against retroactivity, applies. *See id.*[4] In this

[4] Citing Wisconsin cases, the majority acknowledges the presumption that legislation applies prospectively only, unless express statutory language or necessary implication indicates an intended retroactive application. *See* majority op. at 162. In my view, the approach taken by our prior decisions is consistent with the approach and philosophy of *Landgraf. See, e.g., Employers Ins. of Wausau v. Smith*, 154 Wis. 2d 199, 223–24, 453 N.W.2d 856 (1990) ("The strong common-law tradition is that the legislature's primary function is to declare law to regulate future behavior. As a matter of justice, laws should not be enforced before people can learn of the law and conduct themselves accordingly, and retroactivity disturbs the stability of past transactions.").

We have noted that the doctrine of prospective interpretation does not apply to procedural or remedial statutes. *See, e.g., Gutter v. Seamandel*, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981); *Employers Ins.*, 154 Wis. 2d at 224 n.21. "While statutes in general are construed prospectively the rule is otherwise with statutes whose operation is procedural or remedial. . . .'This doctrine. . .is not understood to apply to remedial statutes, which. . .only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations.' " *Gutter*, 103 Wis. 2d at 17–18 (citations omitted). Procedural and remedial statutes are therefore distinguished from statutes that affect substantive rights. *See, e.g.*, the distinction made by the *Landgraf* Court: "We have sometimes said that new 'remedial' statutes. . .should presumptively apply to pending cases. While that statement holds true for some kinds of remedies, we have not classified a statute introducing damages liability as the sort of 'remedial'

case, the majority concedes that application of the Spills Law necessarily involves Chrysler's past affirmative conduct of surrendering its hazardous waste to an unlicensed hauler. *See* majority op. at 137, 141.

¶ 135. As a first step, there is no dispute that the Wisconsin legislature did not clearly express an intent that the Spills Law be applied to pre-enactment conduct.[5] Nor does the forfeitures provision applicable to Spills Law violations expressly address retroactivity.[6]

¶ 136. Thus, the next step in the *Landgraf* analysis is to determine whether application of the Spills Law will have a retroactive effect. The majority denies

---

change that should presumptively apply in pending cases." 511 U.S. at 285 n.37.

I conclude that the Spills Law, as it imposes liability for the restoration or remediation of environmental contamination and for penalties or forfeitures, affects substantive rights. Effective May 21, 1978 it imposed a new obligation on persons possessing or controlling or causing a hazardous discharge. Therefore, the Spills Law is not merely procedural or affecting a remedy.

[5] **Wis. Stat. § 144.76 (1977) Hazardous substance spills. (1)** DEFINITIONS. As used in this section:

(a) "Discharge" means, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying or dumping.

(b) "Hazardous substance" has the meaning given under s. 144.30(10).

. . .

(3) RESPONSIBILITY. Persons having possession of or control over a hazardous substance being discharged, or who cause a hazardous discharge, shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from any discharge to the air, lands or waters of this state.

[6] **Wis. Stat. § 144.57 (1969) Penalties.** Any person who violates this chapter, or who fails, neglects or refuses to obey any general or special order of the department, shall forfeit not less than $10 nor more than $5,000, for each violation, failure or refusal. Each day of continued violation is a separate offense.

that application of the forfeiture provision of the Spills Law to Chrysler will have a retroactive effect based on its interpretation of the verb "causes" in Wis. Stat. § 144.76(3). Because the verb "causes" is not defined in the Spills Law, the majority invokes rules of statutory construction to determine the common and ordinary meaning of "causes." In doing so, the majority first considers the purpose of Wis. Stat. § 144.76.

¶ 137. This court has said that the purpose of the Spills Law is to "prevent, minimize, and, if necessary, abate and remedy contamination of this state's environment. . .caused by discharges of hazardous substances." *State v. Mauthe*, 123 Wis. 2d 288, 299, 366 N.W.2d 871 (1985); *also see* Wis. Stat. § 144.025;[7] 144.76. The majority contends that this statement of purpose alone compels the conclusion that the legislature intended the verb "causes" to include both the commission and omission of an act which leads to a hazardous waste spill. *See* majority op. at 169. But identifying remediation as a statutory purpose does not, ipso facto, insert "failure to remediate" into Wis. Stat. § 144.76(3), the liability provision. Nor does a statement of legislative purpose necessarily absolve a statute of an ex post facto taint. "It will frequently be true. . .that retroactive application of a new statute would vindicate its purpose more fully. That consideration, however, is not sufficient to rebut the presumption against retroactivity." *Landgraf*, 114 S. Ct. at 285–86.

---

[7] Wis. Stat. § 144.025, the statement of policy and purpose for ch. 144, states that this act and rules and orders pursuant to it shall be liberally construed in favor of the policy objectives of the act. I agree that remedial statutes, such as those requiring restoration of contaminated property, can be liberally construed. Punitive statutes, in contrast, are strictly construed.

¶ 138. The majority consults a legal dictionary to ascertain the meaning of the verb "causes." Normally, our rules of statutory construction, which seek to ascertain the common and ordinary meaning of a term, look to general dictionaries of the English language. For instance, in the American Heritage Dictionary at 305, the verb "cause" is defined as

> 1. To be the cause of or reason for; result in. 2. To bring about or compel by authority or force: The moderator invoked a rule causing the debate to be ended.

The difference between an ordinary dictionary definition of the verb "cause," and the definition found in a legal dictionary may be minor. But the majority combines the law dictionary definitions of both the verb "cause" and the noun "cause" to reach its conclusion that Chrysler's failure to act, more than eight years after delivering its waste to Keller, can be a reason for the condition of discharge existing on the Bark River site today. Enhancing the definition of the verb with the definition of the noun enables the majority to put the verb "causes" as used in Wis. Stat. § 144.76(3) on a timeless continuum. In addition, the majority blends *Mauthe*'s conclusion that conscious human conduct is not needed to comport with the definition of "discharge" into a conclusion that conscious human conduct is not needed to fit the liability provision "causes a discharge." *See* majority op. at 170.

¶ 139. Moreover, the majority's brief effort at statutory construction does not take up the canon that when determining the meaning of a single word or phrase, the word or phrase should be viewed in light of the entire statute. *See State v. Sweat*, 208 Wis. 2d 409, 416, 561 N.W.2d 695 (1997). The contemporaneous lan-

guage of various other Spills Law provisions are, like Wis. Stat. § 144.76(3), devoid of an intent to apply to past conduct.

¶ 140. For example, Wis. Stat. § 144.76(4) provides:

> "PREVENTION OF DISCHARGE. (a) The department may require that preventive measures be taken by any person *possessing or having control* over hazardous substances when it finds:
> . . .2. Past discharges *by this person* indicate that the existing control measures are inadequate *in preventing* discharges." (Emphasis added.)

In addition, Wis. Stat. § 144.76(7)(b) provides:

> The *person causing* the discharge shall reimburse the department for actual and necessary expenses incurred in carrying out its duties under this subsection. (Emphasis added.)

Subsection (9)(c) of the Spills Law also speaks in contemporaneous terms: "*Any person discharging* with a permit or approved under this chapter *is exempted* from the reporting and penalty requirements of this section." Finally, Wis. Stat. § 144.76(10)(b) directs that:

> "*Any person who discharges* a hazardous substance, where the responsibilities for such a discharge are prescribed by statute other than ss. 144.60 to 144.74, shall be subject to the penalty under either this section or the other section but not both."

¶ 141. All of the referenced subsections speak in active terms about persons who possess or control, or who cause, hazardous discharges. Application of those subsections would not have a retroactive effect. How-

ever, under the majority's application of Wis. Stat. § 144.76(3) to Chrysler, that subsection does have a retroactive effect.

¶ 142. *Landgraf* reminds us that the Court has "strictly construed the Ex Post Facto Clause to prohibit application of new statutes creating or increasing punishments after the fact." 511 U.S. at 275 n.28. In this case, the State seeks to recover penalties from Chrysler. The majority concedes that "authorization of penalties up to $5,000 per day serves, at least in part, to punish offenders of the Solid Waste Law."[8] Majority op. at 153–54. In my view, by applying the Spills Law to Chrysler, the State seeks to create or increase punishment after the fact. Chrysler's only conduct in this case occurred in 1970. Under the majority's reasoning, Chrysler will pay Spills Law forfeitures for action it took eight years before the law was enacted.[9]

¶ 143. The majority relies on the continuing nature of a discharge to avoid invocation of ex post facto: "In this case, the ongoing nature of a hazardous substance spill eliminates any concern that the State seeks to 'impose a new duty' or 'attach new legal conse-

---

[8] Violations of both the Solid Waste Law and the Spills Law were subject to penalties or forfeitures as provided by Wis. Stat. § 144.57, or a subsequent version of the same statute. *See* majority op. at 141.

[9] I am perplexed by the majority's conclusion, despite Chrysler's assertion that penalties cannot be assessed under the Spills Law until a defendant affirmatively declines to undertake remedial action, that "a plain reading of (the statutes) illustrates that a *de facto violation* of the Spills Law is sufficient to trigger penalties." Majority op. at 145 n.13 (emphasis added). If *de facto violation* means a literal, in fact or actual violation, how is that description different from Chrysler's interpretation?

quences' to events completed before the effective date of the Spills Law." Majority op. at 172. But the federal environmental case law cited by the majority makes a distinction between prospective remedial or injunctive relief, and the retroactive imposition of compensatory or punitive sanctions.

¶ 144. The majority cites *United States v. Diamond Shamrock*, 17 E.R.C. 1329, 12 Envtl. L. Rep. 20,819 (N.D. Ohio 1981), where a district court considered a summary judgment motion under § 6973 of the Resource Conservation and Recovery Act (RCRA). The defendant asserted that as it applied to antecedent acts, the RCRA provision was unlawfully retroactive. The district court disagreed, citing legislative history characterizing the particular RCRA provision as "designed to abate and remedy conditions which constitute imminent hazards to health or the environment. Its focus is on the prevention and amelioration of conditions, rather than the cessation of any particular affirmative human conduct." 12 Envtl. L. Rep. at 20822. The *Diamond Shamrock* court concluded that because § 6973 provided for injunctive relief, "as opposed to compensatory or punitive relief," it was not impermissibly retroactive. *See id.*

¶ 145. The majority essentially ignores this distinction by the *Diamond Shamrock* court in the remainder of its discussion of penalties for Spills Law violation. In avoiding this analysis, the majority overlooks the fact that the presumption against retroactivity is strongest when the application of the law results in punishment.[10]

---

[10] The parties' briefs and the majority opinion to some extent blend the analysis of whether a statute which imposes sanctions for past conduct violates either the specific prohibition against ex post facto laws, or the general presumption

¶ 146. Despite the ongoing nature of a hazardous discharge, Chrysler's conduct in this case, unlike the

against retroactivity. This court said that "An ex post facto law is one which imposes punishment for an act which was not punishable at the time it was committed or imposes an additional punishment to that then prescribed. [This] constitutional provision( ) appl[ies] only to statutes which impose penalties." *Wis. Bingo Sup. & Equip. Co. v. Bingo Control Bd.*, 88 Wis. 2d 293, 304–05, 276 N.W.2d 716 (1979) (citations omitted). The *Wis. Bingo* court went on to describe the prohibition against retroactive laws. "This doctrine is applicable to civil statutes which adversely affect vested rights. A retrospective statute is unconstitutional if its effect is to deprive a person of life, liberty or property without due process of law." *Id.* at 306 (citation omitted).

More recently, this court adhered to the United States Supreme Court's definition of an ex post facto law as one which "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed. . . ." *State v. Thiel*, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994), quoting *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). In my view, the ex post facto prohibition is directed not only against crimes, but against certain civil offenses. For instance, this court cited both *Thiel* and *Collins* in *State v. Carpenter*, 197 Wis. 2d 252, 272, 541 N.W.2d 105 (1995), when it said that "[i]t is well established that the constitutional prohibition on ex post facto laws applies only to penal statutes." Black's Law Dictionary at 1132 (6th ed. 1009), defines the word "penal" as "punishable; inflicting a punishment; containing a penalty, or relating to a penalty." Black's defines "penal action" in this manner:

> In its broadest context, it refers to criminal prosecution. More particularly, it refers to a civil action in which a wrongdoer is subject to a fine or penalty payable to the aggrieved party . . . The word 'penal' is inherently a much broader term than 'criminal' since it pertains

conduct of Mr. Mauthe, was a completed event before the enactment of the Spills Law. The majority's application of the forfeiture provision to Chrysler attaches new legal consequences to a completed event.[11]

¶ 147. In my view, the majority's analysis of the retroactive effect of the Spills Law forfeiture provision, as applied to Chrysler, is inadequate, in error, and as a result reaches the wrong conclusion. I would affirm that part of the decision and order of the circuit court granting summary judgment to Chrysler on the State's request for forfeitures under the Spills Law.

¶ 148. I am authorized to state that Chief Justice Shirley S. Abrahamson and Justice Ann Walsh Bradley join in this opinion.

---

to any punishment or penalty and relates to acts which are not necessarily delineated as criminal.

*Id.*

[11] Indeed, when the majority opines that "Chrysler caused the discharge at issue after the Spills Law took effect in 1978, *irrespective* of Chrysler's activities prior to that date," majority op. at 173 (emphasis added), it unleashes Spills Law forfeiture liability on *anyone* who failed to restore land or groundwater contaminated by a hazardous discharge. The majority's following statement, that "because Chrysler generated the hazardous substances, and caused their discharge after 1978 by failing to remediate, it is liable . . ." does not re-tether liability to the terms of the statute.